J-A28045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THOMAS SHIELDS | : | No. 544 EDA 2023 |

Appeal from the Order Entered January 31, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001153-2013

BEFORE: OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED JUNE 3, 2024**

The Commonwealth of Pennsylvania appeals from the grant of relief in the form of a new trial pursuant to the Post Conviction Relief Act, 42 Pa.C.S. § 9541 ***et seq***. (the "PCRA"), entered by the Philadelphia Court of Common Pleas on January 31, 2023. This case has been sent back to the PCRA court twice. We reverse the PCRA court's order granting a new trial and remand for the filing of a supplemental opinion and order.[1]

This Court set forth the underlying facts of this case on direct appeal:

At approximately 1:40 p.m. on November 17, 2012, Dwayne Walters left his apartment to get a haircut. As he was opening the door of his rental car, a white Dodge, Lamar Roane approached him and asked him for a light. When Mr. Walters responded that

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We are entering a similar order in the Commonwealth's appeal in Appellee's co-defendant brother's case. ***See Commonwealth v. Charles Shields***, No. 543 EDA 2023.

he did not smoke, Roane seized Mr. Walters's arm. At that moment, [Appellee] and his brother, Charles Shields, emerged from hiding, and the three men surrounded Mr. Walters. [Appellee] pulled out a chrome-colored handgun and thrust it into Mr. Walters's abdomen. [Appellee] attempted to force Mr. Walters into the white Dodge, but Mr. Walters grabbed [Appellee's] gun. The two briefly wrestled until Charles Shields brandished a black handgun and forced Mr. Walters into the driver's door of his white Dodge. Charles shoved Mr. Walters over the center console to the passenger side of the vehicle, and got behind the wheel of the car. Roane and [Appellee] went around the car and entered the back seats.

Mr. Walters unlocked the passenger door and exited the car. Roane grabbed Mr. Walters' jacket, but Mr. Walters shed his jacket and ran. When Mr. Walters looked back to see if Roane was in pursuit, he saw [Appellee] and Charles pointing guns at him. Seconds later, a single bullet struck Mr. Walters in his back and exited his chest.

A resident of Mr. Walters' apartment complex, Jennifer Boyle, glanced out her window as she heard men arguing outside. She observed two men, whom she identified as [Appellee] and Charles Shields, fire their guns. Ms. Boyle saw Mr. Walters clutch his back and continue to run until he was out of her sight.[2]

Bleeding profusely, Mr. Walters stopped running when he came to a vehicle occupied by two women and a boy. He entered the rear seat of that vehicle and pressed his back up against the seat in an effort to stop the bleeding. One of the women panicked and demanded that Mr. Walters leave. When he tried to stand, he collapsed onto the nearby sidewalk. As he lay there, Mr. Walters watched his white Dodge rental car leave the parking lot.

At approximately 1:39 p.m., Philadelphia Police received a 911 call reporting a shooting near 2607 Welsh Road, Philadelphia, Pennsylvania. Officer Brandon Badey was first on the scene and saw Mr. Walters on the ground, holding a blood-soaked towel to his chest. Officer Badey knew Mr. Walters's condition was critical and, with the help of the second officer on scene, placed Mr.

_____

2 Although this Court stated that Ms. Boyle identified Appellee and his brother as the shooters, there is no testimony to that effect in the trial record. However, her testimony was consistent with a conclusion that it was the co-defendants who were shooting at Mr. Walters.

Walters in the back of his patrol car and rushed him to the hospital. Once at the hospital, Mr. Walters was taken directly to surgery. He remained hospitalized for six weeks.

An investigation of the crime scene yielded two .45 caliber bullet casings along with a cellphone. The police department's ballistics expert determined that these two bullet casings were fired from the same gun. The cellphone's SIM card contained videos and photos indicating it belonged to [Appellee]. When investigators obtained a search warrant for [Appellee's] phone, they noticed three distinct numbers that [Appellee] called frequently in the days and hours leading up to the shooting. Investigators acquired search warrants for the records associated with those numbers and learned that they belonged to Lamar Roane, Charles Shields, and Mr. Walters.

Investigators showed Mr. Walters a photographic array and he identified both [Appellee] and Charles. Police officers arrested [Appellee] at 1758 East Washington Lane, Philadelphia, Pennsylvania, and subsequently searched that residence. They found one .45 caliber bullet with a casing that looked like the bullet casings found at the crime scene.

Mr. Walters testified at trial that he previously sold drugs on behalf of [Appellee] and Charles. He stated that, before the incident, [Appellee] and his brother made numerous harassing phone calls and sent threatening text messages due to an alleged $700 debt Mr. Walters owed [Appellee] following a recent drug transaction.

On May 16, 2014, a jury found Appellant guilty of aggravated assault, conspiracy to commit aggravated assault, and attempted kidnapping. He was acquitted of attempted murder, firearms not to be carried without a license, and possession of an instrument of crime.

*Commonwealth v. Thomas Shields*, 3446 EDA 2014, 2016 WL 5210894, *1-*2 (Pa. Super., filed July 15, 2016), *appeal denied*, 166 A.3d 1228 (Pa. 2017).

In addition, the Commonwealth presented at trial cell phone tower data that demonstrated that someone in possession of Charles Shield's T-Mobile

- 3 -

cell phone was within the service area of the southeast sector of a cell phone tower at 2555 Welsh Road for about an hour and a half immediately before the kidnapping attempt and shooting. N.T. 5/12/14, 9. The crime scene is close to the base of that tower. *Id*. Inferring that it was Appellee's brother in possession of his phone, this pattern would be consistent with him staking out the victim's apartment. Starting at 1:40 p.m., immediately after the shooting, Charles Shields' cell phone was on the move away from the crime scene. *Id*., 9. It first connected to a cell tower northwest of the crime scene, then on a cell tower near the entrance to the Pennsylvania Turnpike, and at 2:21 p.m. it was on a cell tower on Bethlehem Pike more than 12 miles west of the crime scene and northwest of the city, which distance, timing and location would be consistent with Charles Shields having been near the crime scene in the northeast section of the city, then on the turnpike heading to his residence in Germantown in the northwest section of the city. *Id*., 10-12. The phone connected and remained connected to a cell tower near his residence at 2:53 p.m. *Id*., 12.

The Sprint cell phone associated with Lamar Roane connected to a cell tower approximately a half mile from the apartment complex at 1:19 p.m. *Id*., 14. At 1:40 p.m., it was connected to a tower about a mile northwest, and on another tower 5.6 miles northeast of that about 15 minutes later. *Id*. 14-15. At 2:12 p.m. the phone connected to the same cell tower on Bethlehem Pike that Charles Shields' phone had connected to at 2:21 p.m. *Id*., 10, 15. Roane's phone ultimately connected to the cell tower near his residence on

Washington Lane in Germantown in the northwest section of the city by 2:21 p.m. and stayed connected to that tower through 2:56 p.m. *Id.*, 15-16. The evidence at trial thus showed Charles Shields and Roane followed a similar path leaving the crime scene at approximately the same time immediately after the shooting. *Id*., 16. Appellee's cell phone was found at the scene. N.T. 5/8/14, 86, 100. The straightforward inference from the cell phone location evidence is that Appellee, his brother and Lamar Roane, residents in Germantown, had travelled across the city to the Apartment complex, with Charles Shields leaving first to watch the victim's apartment for a time and the other two joining him shortly before the attempted kidnapping and shooting. The trio then fled immediately, in near unison, after the shooting to return to Germantown.[3]

The jury found Appellee guilty of aggravated assault with serious bodily injury, conspiracy to commit aggravated assault and attempted kidnapping. It acquitted him of attempted murder, carrying a firearm without a license and possessing an instrument of crime. The trial court imposed an aggregate term of 21 to 42 years' imprisonment. This Court affirmed the judgment of sentence

_____

[3] On the day of the shooting, cell phone records established that someone using Charles Shields' cell phone called or messaged Appellee's cell phone, the one ultimately left at the scene, 16 times that day, ending at 1:19 p.m. N.T. 5/9/14, 21-24. Someone using Appellee's phone called or messaged Charles Shields' phone 15 times, ending at 12:07 p.m. *Id.*, 25. There also were five calls or messages between Charles Shields' and Lamar Roane's cell phones starting at 12:23 p.m. and ending at 1:40 p.m., as well as four calls from Charles Shields' phone to the victim's phone in the morning. *Id.*, 26-30. This pattern of calls supports the inference that the three conspirators converged on the scene of the shooting.

on July 15, 2016. The Supreme Court of Pennsylvania denied a petition for allowance of appeal on February 15, 2017.

On February 12, 2018, Appellee filed a timely *pro se* PCRA petition. Counsel was appointed and amended the petition. In the amendment and subsequent filings, Appellee alleged, *inter alia*, that trial counsel provided ineffective assistance by not objecting to portions of the prosecutor's summation and not objecting to the court's instruction on an "overt act" as an element of criminal conspiracy, and by not moving to suppress the cell phone and information retrieved from it. The Commonwealth filed a motion to dismiss the petition. On September 19, 2019, the trial judge, sitting as the PCRA court, summarily granted the petition without holding an evidentiary hearing. The Commonwealth timely sought reconsideration alleging PCRA court error in not holding a hearing or specifying the claim or claims on which it granted relief. Before the PCRA court ruled on the reconsideration, the Commonwealth appealed.

On December 18, 2020, this Court remanded while retaining jurisdiction, because it was unable "to determine which of [Appellee's] ineffectiveness claims the PCRA court [had] found to be meritorious." **Commonwealth v. Shields**, 2990 EDA 2019, 2020 WL 7419524, *2 (Pa. Super., filed Dec. 18, 2020). "[T]he PCRA court did not indicate in its September 19, 2019 order the basis on which it granted [Appellee's] petition for PCRA relief. Nor did the PCRA court provide in its Pa.R.A.P. 1925(a) opinion the reasons for the rulings and errors complained of by the Commonwealth in

its concise statement." *Id*. This Court ordered the PCRA court to issue a revised opinion addressing the issues raised by the Commonwealth. *Id*.

The PCRA court complied by revising its opinion "to indicate that PCRA relief was granted on multiple bases, including on claims made by [Appellee] that trial counsel was ineffective." ***Commonwealth v. Shields***, 2990 EDA 2019, 2021 WL 3056777, **1 (Pa. Super., filed July 20, 2021) (the "***Remand Order***"). Further, the PCRA court stated both that "if … trial counsel had objected at the proper times, this court believes that a curative instruction would have been offered" and that "these failures of counsel to object could not reasonably have been designed to further [Appellee's] interests." *Id.*

This Court remanded again, stating:

> [B]ecause the PCRA court did not conduct an evidentiary hearing to permit trial counsel to explain the bases for his trial strategies, we cannot determine whether trial counsel had a reasonable basis for not filing a motion to suppress and not objecting to comments made by the prosecutor during closing argument or to the trial court's jury instructions. Without this critical evidence, it was improper for the PCRA court to summarily conclude that counsel did not have a reasonable basis for his actions. Additionally, the PCRA court did not address whether there was a reasonable probability that the outcome of the proceedings would have been different had trial counsel filed a motion to suppress and made the specified objections.

*Id*. Thus, on July 20, 2021, this Court vacated the order granting PCRA relief and remanded for the PCRA court to conduct an evidentiary hearing. *Id*.

The ordered hearing was held before the PCRA court on September 15, 2022. There is no order in the record limiting the claims to be addressed at the hearing. Trial counsel for Appellee and Appellee's brother testified.

Appellee's trial counsel testified to his reasons for: not seeking to suppress the information found on the cell phone found by police at the scene, N.T. 9/15/22, 45-49, 57-60; not objecting to the closing portion of the prosecutor's summation, *id*., 49-50, 61-62; and not objecting to an instruction that inured to his client's benefit, *id*., 51-52.[4]

At the conclusion of testimony, PCRA counsel primarily argued the ineffective assistance of trial counsel for not moving to suppress the cell phone found on the scene on the ground that the Commonwealth's evidence showed there had been a struggle with the victim during which the cell phone was dropped, which, he argued, distinguished voluntarily abandonment of the phone. N.T. 9/15/22, 80-84. With respect to trial counsel's failure to object to the prosecutor's summation in which she asked the jury to put themselves at the scene, counsel argued there was no reasonable basis and prejudice because of the risk the jury might reach a verdict based on passion and not evidence. *Id*,. 85-86. PCRA counsel also argued that the instruction on overt

---

[4] Appellee's brother's counsel testified to: the reasons he did not object to the closing portion of the prosecutor's summation, N.T. 9/15/22, 10-19; his overall trial strategy, *id*., 20-21; his reason for objecting to and requesting a curative instruction for the prosecutor saying he tried to "mislead" the jury, *id*., 23-24; his reason for not objecting to an instruction that inured to Appellee's benefit, *id*., 25-29; and reasons for not raising the Rule 404(b) issue on appeal, *id*., 30-31

act was confusing and not objecting was prejudicial because it could have led to the jury using the wrong standard. *Id*., 86-88.[5]

With respect to the prosecutor's summation, the Commonwealth argued that, in context, the argument addressed the character attacks on the victim and stressed that even though not a perfect person, he still had a right to not be shot and robbed by the co-defendants who put others at risk with their actions. The Commonwealth also argued that the defendants' trial strategy was to avoid conviction for attempted murder, which goal was achieved, and emphasized that it was a reasonable strategy. Moreover, there was no prejudice as an objection would have, at most, obtained a curative instruction that likely would have tracked the court's general instruction to base the verdict on the evidence. *Id*. 95-105. That instruction was given. The Commonwealth also noted that the physical evidence corroborated the victim's testimony. *Id*., 106-111. The Commonwealth also argued reasons to reject the ineffectiveness claims with respect to suppression and the court's instruction. *Id*., 90-94, 112-114. The PCRA court held its decision under advisement. *Id*., 133.

---

[5] PCRA counsel for Appellee's brother explicitly withdrew the ineffective assistance claim against direct appeal counsel for not raising the Rule 404(b) issue. N.T. 9/15/22, 67. PCRA counsel then forwarded argument on the allegations of ineffective assistance based on the failure of trial counsel to object to the final portion of the prosecutor's summation, including on both the lack of a reasonable basis and the presence of prejudice based on inconsistent verdicts. *Id*., 67-73. Counsel also argued both a lack of reasonable basis and prejudice for the allegation of ineffectiveness for failing to object to the court's instruction on the overt act element. *Id*., 73-77.

On January 31, 2023, the PCRA court entered an order and memorandum opinion on the docket. **See** Trial Court Docket Entries 295 & 296; Trial Court Record, 557. The order recited the petition, subsequent filings, Commonwealth responses, and independent review of the record and argument of counsel at an evidentiary hearing, and "ordered and decreed that the Petitioner's Petition is granted and the defendant is awarded a new trial." **See** Trial Court Record, 557. The PCRA court contemporaneously filed an opinion which explained that the grant of the petition and award of a new trial was on the ground that trial counsel was ineffective for not objecting to "claims" made in the prosecutor's summation. PCRA Court Opinion, 8. Specifically, the PCRA court ruled that there was arguable merit that trial counsel should have objected to claims "such as" (1) trial counsel "was 'purposefully trying to mislead you [the jury]'" or (2) "it's about people like you… [the jury], [w]ho live in apartment complexes like the people at the Joshua Street Houses." **Id**. (brackets in PCRA court opinion). **See** N.T. 5/15/14, 13, 24.

The PCRA court then found that trial counsel did not articulate a reasonable basis for electing not to object to the final portion of the prosecutor's summation. That counsel "presumed it was prejudicial to his client, but did not want to belabor the point," was not a strategy "designed to effectuate his client's interests." PCRA Court Opinion, 8.

Addressing the prejudice prong, the PCRA court wrote:

Finally, this court finds that there is, in fact, a reasonable probability that the outcome of the proceedings would have been different had trial counsel objected to [the prosecutor's] closing statement. This court finds that statements made in the ADA's closing such as, "Bullets don't have names on them ... Bullets don't care who you are or what you do. Bullets don't care if you're Dwayne Walters or if you're a kid riding a bike. That's why this case isn't about Dwayne. It's about this." [N.T. 9/15/22, 12.] Furthermore, other remarks made in the closing mentioned above could have reasonably, unfairly prejudiced the jury against Appellant as counsel did not object to them during trial.

PCRA Court Opinion, 8-9. Accordingly, the court granted Appellee's "PCRA [petition] and order[ed] that a new trial be held in the matter." *Id*. at 9.

The Commonwealth filed a timely appeal. Notably, the PCRA court neither ordered a Rule 1925(b) Statement, nor filed a revised opinion.

The Questions Presented in the Commonwealth's brief are:

1. Did the PCRA court err by granting defendant post-conviction relief and awarding him a new trial based, in part, on a hypothetical claim of ineffective assistance of trial counsel, where defendant never raised that claim? …

2. Did the PCRA court err by granting post-conviction relief and awarding defendant a new trial based on the claim that trial counsel was ineffective for not objecting to a remark the prosecutor made during closing argument that, while properly reminding the jury that the victim's character was not on trial, briefly referred to the wider community, where the passing comment did not prevent the jurors from weighing the evidence objectively and rendering a true verdict?

Commonwealth's Brief, 4.

When reviewing the grant of PCRA relief, "we determine whether the PCRA court's determinations are supported by the evidence of record and are

free of legal error." **Commonwealth v. Brown**, 196 A.3d 130, 150 (Pa. 2018). We will not disturb the PCRA court's factual findings unless the certified record does not support them. **Id**. We review its legal conclusions *de novo*. **Id**.; **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011).

> With respect to claims of ineffective assistance of counsel, counsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary. [**Commonwealth v. Hanible**, 30 A.3d 426, 439 (Pa. 2011)]. To prevail, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. **Id.** With regard to the second prong (reasonable basis), "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." [**Id.**] We will hold that counsel's strategy lacked a reasonable basis only if the petitioner proves that a foregone alternative "offered a potential for success substantially greater than the course actually pursued." **Spotz**, 18 A.3d at 260. Our review of counsel's performance "must be highly deferential." **Commonwealth v. Tharp**, … 101 A.3d 736, 772 (Pa. 2014) (quoting **Strickland v. Washington**, 466 U.S. 668, 689 (1984)). To establish the third element (prejudice), the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. [**Hanible**, 30 A.3d at 439]*.

**Brown**, 196 A.3d at 150–51 (internal citations edited for clarity). A failure to satisfy any of the three prongs is fatal to the claim of counsel's ineffectiveness. **Id.** at 151; **Commonwealth v. Midgley**, 289 A.3d 1111, 1119 (Pa. Super. 2023).

The Commonwealth first argues that the PCRA court ruled trial counsel was ineffective for not objecting to the prosecutor's statement to the jury "I

don't know why [counsel for co-defendant is] purposefully trying to mislead you." Appellant's Brief, 13; N.T. 5/15/14, 13. We do not read the PCRA court's opinion to have granted relief on that claim, but to the extent it did, we agree it would be erroneous.[6]

During the prosecutor's summation, she stated:

Now, the shooting happens right before 1:38pm. Now, how do we know that? Because there's a 911 call, the 911 print out, that we all agreed to or stipulated to. Showing the first 911 call at 1:37:52pm. So the shooting happened, what, a minutes or two before. I don't know why [co-defendant's counsel] -- I don't know why he's purposefully trying to mislead you.

[Co-defendant's Counsel]: Objection.

[Prosecutor]: I would hope not, but the defendants, the evidence, that they agreed to put the shooting at before 1:38, and 2 to 3 minutes after that shooting, Charles Shields, and at least Lamar Roane because we have his phone and are driving away.

N.T. 5/15/14, 13.

As the Commonwealth notes, and Appellee agrees, this claim was never raised before the PCRA court by Appellee. Commonwealth's Brief, 13; Appellee's Brief, 3. "As this claim was never raised before the PCRA court, it cannot be raised for the first time on appeal." *Commonwealth v. Bedell*, 954 A.2d 1209, 1216 (Pa. Super. 2008); *accord Commonwealth v. Edmiston*, 851 A.2d 883, 889 (Pa. 2004) (reiterating that "[c]laims not raised

---

[6] The PCRA court opinion is not a model of clarity, which we will discuss further with respect to remand. We find it particularly problematic that the PCRA court has not made its rulings clear in light of the prior remands in this PCRA proceeding.

in the PCRA court are waived and cannot be raised for the first time on appeal").

In any event, co-defendant's counsel, at whom the challenged comment was directed, in fact objected. N.T. 5/15/14, 13. Not only did co-defendant's counsel object, but the trial court sustained the objection at the conclusion of the prosecutor's summation. N.T. 5/15/14, 24. Co-defendant's counsel then asked for a mistrial. *Id*., 25. The trial court, which also was the PCRA court, and which had heard the final portion of the prosecutor's summation immediately prior to the sidebar, then denied both a mistrial and a cautionary instruction. *Id*., 26. There could be no merit to an allegation of ineffectiveness against co-defendant's counsel, who in fact objected. ***Commonwealth v. Spotz***, 896 A.2d 1191, 1224 (Pa. 2006). Since no relief was granted for the objection raised by co-defendant's counsel, there was no probability that the outcome of trial would have been different, and thus no actual prejudice to Appellee when Appellee's counsel did not object. ***Commonwealth v. Hammond***, 953 A.2d 544, 562–63 (Pa. Super. 2008) (reversing grant of post-conviction relief where PCRA hearing evidence did not support conclusion that "a different outcome at trial" would result).[7]

_____

[7] For the purposes of completeness, the objected to "claim" by the prosecutor was referring to the co-defendant counsel's argument that the cell tower data showed that co-defendant had left the scene before the shooting, but the record was clear that the shooting had to occur before the first 911 call reporting it, which information was broadcast over police radio and received at 1:39 p.m., and co-defendant's cell phone was connected to the cell tower
*(Footnote Continued Next Page)*

The Commonwealth's second claim argues that the PCRA court erroneously granted relief on an allegation of trial counsel's ineffective assistance for declining to object to the prosecutor's summation, which allegation was based on the following passage:

> I know I've talked for a long time. And I just have one more thing to say. Dwayne Walters may not be a great guy. He's an admitted drug dealer. He's an admitted non-violent drug dealer. Dwayne Walters isn't my friend, he's not coming over to my house for Sunday dinner. We're not watching the Phillies together. But I want you to understand something very important. This case isn't about Dwayne. It's about you. It's about each and every one of you. **It's about people like you who live in apartment complexes like the people at the Joshua Street Houses**. It's about people like you who want to raise their kids and families in safe environments, safe from people like the defendants who shoot guns in the middle of the parking lot. It's about this. And it's about this. **Bullets don't have names on them**. They don't have zip codes. There's no GPS tracker. **Bullets don't care who you are or what you do. Bullets don't care if you're Dwayne Walters or if you're a kid riding a bike. That's why this case isn't about Dwayne. It's about this**. No one has the right to shoot anybody. Period. End of story.

> This was a bold and brazen shooting in broad daylight and the evidence is convincing and it's compelling. And it could not be more clear that these defendants are guilty.

---

near the victim's apartment from 11:53 a.m. until 1:20 p.m. and only connected to a different cell tower, a half mile northwest, after the shooting, at 1:40 p.m. N.T. 5/6/14, 27; N.T. 5/12/14, 9. While the objection to the prosecutor's disparagement of counsel was properly sustained, the purpose of the argument was both proper rebuttal of a defense claim and evidence based.

N.T. 5/15/14, 23-24 (emphasis supplied based on the PCRA court's emphasis in its analysis).[8]

The PCRA court ruled there was arguable merit to the underlying claim that counsel should have objected to the prosecutor's assertions "such as" the case being "about people like you who live in apartment complexes like the people at the Joshua Street Houses." PCRA Court Opinion, 7. Although we do not find that statement particularly worrisome as it was merely a rhetorical device to impart on the jury the seriousness of a shooting in a public area, even one over a drug debt, we agree there is a problematic assertion in this passage. The prosecutor's reference to "a kid riding a bike" in the path of a bullet was a fact not in evidence. There was evidence that it was a sunny, unusually warm weekend afternoon in a residential area, and Dwayne Walters testified there was a child in a car in which he sought refuge. N.T 5/7/14, 49, 68-69; N.T. 5/8/14, 88. We do not have to decide whether the prosecutor's assertion might have been a fair inference. *See Commonwealth v. Luster*, 71 A.3d 1029, 1048 (Pa. Super. 2013) (*en banc*) ("a prosecutor is permitted to 'vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from that evidence'"). It is enough for this purpose to find that it was not clearly so. Therefore, we

_____

[8] We infer from context that where the prosecutor states, "It's about this. And it's about this," she was referring individually to the two fired cartridge casings found at the scene and admitted into the record. *See* N.T. 5/8/14, 94-95.

agree with the PCRA court that an objection would have had at least arguable merit satisfying the first element of the ineffectiveness test.

With respect to the second element, this Court remanded the matter in 2021 for the PCRA court to hold an evidentiary hearing in part to create a record of trial counsel's "legal strategies." **Remand Order**, \*\*1. Trial counsel explained at the hearing that in retrospect he believed this portion of the Commonwealth's summation was objectionable, he did not object, in part, because the prosecutor was making the victim look bad, that is, character assassination of the prosecutor's own witness. N.T. 9/15/22, 51, 56. He also explained that he does not usually object to a prosecutor's argument that he believes work to his client's benefit. **Id**., 56. The PCRA court found that counsel had not articulated a reasonable strategic reason "designed to effectuate his client's interest" for not objecting to the final portion of the prosecutor's summation. PCRA Court Opinion, 8. This ruling is, in part, based on the PCRA court's credibility determination that failing to object to an "outlandish" argument "cannot be seen as reasonably designed to effectuate his client's interests." PCRA Court Opinion, 8. "We must defer to the PCRA court's findings of fact and credibility determinations, which are supported by the record," as they are here. **Commonwealth v. Spotz**, 84 A.3d 294, 319 (Pa. 2014); **Commonwealth v. Harper**, 230 A.3d 1231, 1236 (Pa. Super. 2020).

We also remanded this matter for the PCRA court to "address whether there was a reasonable probability that the outcome of the proceedings would

have been different had trial counsel made the specified objections." **Remand Order**, \*\*1. The PCRA court addressed the prejudice prong as follows:

> [T]his court finds that there is, in fact, a reasonable probability that the outcome of the proceedings would have been different had trial counsel objected to [the prosecutor's] closing statement. This court finds that statements made in the ADA's closing such as, "Bullets don't have names on them … Bullets don't care who you are or what you do. Bullets don't care if you're Dwayne Walters or if you're a kid riding a bike. That's why this case isn't about Dwayne. It's about this." **Id**. p. 12. Furthermore, other remarks made in the closing mentioned above could have reasonably, unfairly prejudiced the jury against Appellant as counsel did not object to them during trial.

PCRA Court Opinion, 8-9.

The PCRA court's discussion is unpersuasive. It merely repeats the legal standard from our 2021 decision and, without reference to the evidence at trial or possible relief, asserted a tautology that Appellee was prejudiced because counsel did not object.

Accordingly, we conduct our own review of the record and hold that prejudice was not proven.

> [T]he prosecutor must be allowed to respond to defense counsel's arguments, and any challenged statement must be viewed not in isolation, but in the context in which it was offered. The prosecutor must be free to present his or her arguments with logical force and vigor." Within reasonable bounds, the prosecutor may employ oratorical flair and impassioned argument when commenting on the evidence....

**Commonwealth v. Bryant**, 67 A.3d 716, 728 (Pa. 2013) (citations omitted);

**Commonwealth v. Riggle**, 119 A.3d 1058, 1068 (Pa. Super. 2015).

The final portion of the Commonwealth's summation was, in context, an aggressive argument by the prosecutor to rebut the attacks on the victim, an admitted drug dealer, while providing the jury with a reason for why they had spent a week in trial over an alleged drug debt that turned violent. An argument focusing on the danger of fired bullets to bystanders is a legitimate concern for the jury whenever the evidence at trial demonstrates that gunfire was initiated in an open and populated public area. If the argument strayed over a line that the trial court would have enforced had there been an objection, it still was not *per se* reversible as it was firmly based in the evidence at trial – other than the reference to a child on a bike – and was about the nature of the crime committed. *See Commonwealth v. Hall*, 701 A.2d 190, 202 (Pa. 1997) ("[C]omments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict"); *Commonwealth v. Patton*, 936 A.2d 1170, 1174-75 (Pa. Super. 2007) (discussing the lack of reversible prejudice for "send a message" arguments generally where arguing for a finding of guilt based on trial evidence), *aff'd*, 985 A.2d 1283 (Pa. 2009). The Pennsylvania Supreme Court has stated in this context that it does "not favor *per se* rules in error review." *Patton*, 985 A.2d at 1288 n.3.

Thus, the question of prejudice turns not on an assumption the argument *per se* denied Appellee a fair trial, but whether an objection would

have had a reasonable likelihood to alter the result at trial. **Commonwealth v. Daniels**, 963 A.2d 409, 427 (Pa. 2009) ("In order to establish prejudice, appellees must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different had counsel pursued the theory they now present"). The evidence against Appellee was strong, albeit not so overwhelming that the jury convicted him on all charges. The victim identified Appellee and his brother whom he knew from the drug trade, explained the nature of the drug debt and Appellee's prior attempts to obtain payment. N.T. 5/7/14, 46, 52-56, 80. There were numerous calls by Appellee's co-defendant brother to Walters the morning of the shooting. N.T. 5/9/14, 28-30. Walters also described the ambush attack, attempted kidnapping, his initial escape and the shooting, much of which was corroborated by a neighbor who saw the confrontation and shooting and the physical items found at the scene. N.T. 5/6/14, 30; N.T. 5/7/14, 9, 15, 47-52, 56-79; N.T. 5/8/14, 17-32, 85-87. In addition, the cell phone location evidence demonstrated that the brother, who lived on the opposite side of the city, had been in the immediate area of Walters' apartment for an hour and a half immediately prior to the shooting, with Appellee and Roane coming into the area shortly before the shooting, having been in near constant contact with Appellee, and then all three fleeing in similar timing and directions after the shooting, with Appellee's cell phone left at the scene. N.T. 5/8/14, 100; N.T. 5/9/14, 19-30; N.T. 5/12/14, 3-16. Accordingly, there was ample evidence on which the jury could base a finding of guilt. We are not persuaded by Appellee's circular argument

that he was prejudiced because the trial court was not given an opportunity to sustain an objection and give a curative instruction or grant a mistrial. Appellee's Brief, 7.

Assuming the trial court would have sustained an objection if it had been raised, it then could have chosen among three responses. It could have given no additional relief – as it did with the objection raised and argued by trial counsel – a cautionary instruction or a mistrial. We do not believe that a cautionary instruction would have changed the jury's verdict, and note that Appellee does not present any argument that it could have. Appellee's Brief, 7.

Obviously, the grant of a mistrial would alter the result of trial. However, as discussed above, the argument itself did not warrant it absent a clear effect on the jury. We note that the trial court had the opportunity to grant a mistrial immediately after the portion of the summation at issue and declined to do so. N.T. 5/15/14, 26. The court was in "the best position to assess the effect" of the summation on the jury. **Commonwealth v. Rega**, 933 A.2d 997, 1016 (Pa. 2007); **Commonwealth v. Simpson**, 754 A.2d 1264, 1272 (Pa. 2000). We do not find it to be reasonably probable that an additional objection by trial counsel would have obtained a mistrial where one had already been denied. Therefore, Appellee failed to prove actual prejudice. "Accordingly, we reverse the PCRA court's grant of a new trial on this basis." **Daniels**, 936 A.2d at 429.

We are aware, however, that the written order of the PCRA court grants the petition (and all subsequent amendments) in total, rather than in part. *See* Trial Court Record, 557. Both Appellee and co-defendant litigated fully before the PCRA court a claim that trial counsel were ineffective for not objecting to the court's instructions on criminal attempt and criminal conspiracy in that they did not clearly distinguish a substantial step from an overt act. N.T. 9/15/22, 73-77, 86-88. The PCRA court did not enter a specific ruling on this claim, either granting it or denying it.[9] We also recognize that whether a reasonable basis or actual prejudice was proven at the hearing may play out differently with a jury instruction claim. Out of fairness to all of the parties, we therefore remand the matter for the PCRA court to write a supplemental opinion stating clearly its ruling on this claim, and its reasons therefor, including a determination of whether the instructions were confusing, whether counsel had a reasonable basis to not object, and whether, in light of the strong evidence supporting the verdict, there was actual prejudice from counsel's alleged failure. We will relinquish jurisdiction so that the parties can,

---

[9] Co-defendant argues in his appeal that the PCRA court granted a new trial on the basis of this allegation. It is clear to us that the PCRA court did not grant relief on this claim of ineffective assistance, as it is not mentioned in the PCRA Court Opinion. We note further that neither the Commonwealth nor Appellee believed the PCRA court had granted relief on this claim as neither discuss it. Moreover, the claim was explicitly mentioned in this Court's 2017 decision ordering the PCRA court to issue a new decision explaining which claims it had granted relief on and the reason for doing so. Therefore, we doubt that the PCRA court would have declined to explicitly grant relief if it had intended to do so after the hearing.

within 30 days of the entry of the supplemental opinion and order, appeal the ruling if they so choose.

To aid the PCRA court to expeditiously file its supplementary opinion, we address the two other claims raised by Appellee and Appellee's brother at the PCRA hearing. Appellee argued at the PCRA hearing that his trial counsel was ineffective for not seeking to suppress the cell phone that he left at the scene. There are two legal bases on which that claim fails. First, subsequent to the time of trial in May 2014, the United States and Pennsylvania Supreme Courts authored decisions altering the legal requirements for suppression of data obtained from cell phones. *See Riley v. California*, 573 U.S. 373, 403 (2014) (requiring search warrant for information on cell phone seized incident to an arrest); *Commonwealth v. Fulton*, 179 A.3d 475, 486-489 (Pa. 2018) (extending search warrant requirement). Counsel cannot be found ineffective for failing to predict a future change in the law. *Commonwealth v. Brown*, 196 A.3d 130, 178 (Pa. 2018). Second, the argument forwarded by Appellee's brother was that the cell phone had been forcibly abandoned by him during a struggle with Walters. N.T. 9/15/22, 80-82. The question of coerced abandonment arises where police conduct causes the possessor of property to abandon control over it. *See Commonwealth v. Jackson*, 698 A.2d 571, 576 (Pa. 1997) ("when the causative factor in the abandonment of the evidence is an unconstitutional search and seizure, the contraband must be suppressed"). In contrast, here, Appellee lost possession of the cell phone

while voluntarily engaging with Walters before any police officer arrived at the scene.

Appellee's brother argues in his appeal that the trial court also granted relief on his allegation that direct appeal counsel was ineffective for not challenging the admission of Rule 404(b) evidence at trial. The PCRA court did not and could not grant relief on that claim, as that allegation of ineffective assistance was explicitly withdrawn at the conclusion of the evidentiary hearing. N.T. 9/15/22, 68.

Based upon the foregoing, the order of the PCRA court is reversed and the matter remanded to the PCRA court. Upon remittal of the record pursuant to Pa.R.A.P. 2591, the PCRA court shall file a supplementary order and opinion addressing the one remaining allegation of ineffective assistance.

Order reversed. Case remanded for entry of a supplementary opinion and order. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2024